1   Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
2   **MANNING LAW, APC**
3   20062 SW Birch Street, Ste. 200
    Newport Beach, CA 92660
4   Office: (949) 200-8755
5   DisabilityRights@manninglawoffice.com

6   Attorney for Plaintiff: JAMES RUTHERFORD

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11  JAMES RUTHERFORD, an             **Case  No**. 5:19-cv-02165-JGBS-SHK
12  individual,
13                                    **Plaintiff's Memorandum of Points and**
                                      **Authorities**
14             Plaintiff,
15  v.                                   Date: August 31, 2020
                                         Time: 9:00 AM
16                                       Ctrm: 1
17  NITES INN CORPORATION, a
18  California corporation; and DOES 1-   Hon. Judge Jesus G. Bernal
    10, inclusive,
19
20             Defendants.
21
22
23
24
25
26
27
28

                              1

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………………………….. 2

TABLE OF AUTHORITIES…………………………………………..…....3

MEMORANDUM OF POINTS AND AUTHORITIES……………………………5

I.     PRELIMINARY STATEMENT………………………………………….5

II.    RELEVANT FACTS…………………………………………………... 6

III.   LEGAL STANDARD………………………………………………..... 9

IV.    THE BARRIERS TO ACCESS……………………………………… 9

    A. Plaintiff is Disabled………………………………………………...11

    B. Defendant Owns and Operates a Place of Public Accommodation….. 11

    C. The Store Has Barriers That are Readily Removable ……………... ...11

    D. The Plaintiff Encountered This Violation and Is Being Deterred From

       Patronage……………………………………………………..…….. 13

V.     VIOLATIONS OF THE ADA ARE UNLAWFUL

      UNDER CALIFORNIA LAW….………………………………… 14

VI.    REMEDIES……………………………………………………….. 14

VII.   CONCLUSION……………………………………………………… 16

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

    603 F.3d 666 (9th Cir. 2010) …………………………….…..…….. 10

*Celotex Corp. v. Catrett*

    477 U.S. 317 (1986) …………………………………………………... 9

*Chapman v. Pier 1 Imports (U.S.) Inc.*

    631 F.3d 939 (9th Cir. 2011) …………………………………... 9, 12, 16

*Cullen v. Netflix, Inc.,*

    880 F.Supp.2d 1017 (N.D. Cal. 2012) …………………..………….…14

*D'Lil v. Best Western Encina Lodge & Suites,*

    538 F.3d 1031 (9th Cir. 2008) ……………………………….…….. 15

*Doran v. 7-Eleven, Inc.,*

    524 F.3d 1034 (9th Cir. 2008) …………………………………….. 15

*Moeller v. Taco Bell Corp.*

    816 F.Supp.2d 831 (N.D. Cal. 2011) ……………………………… 10

*Molski v. M.J. Cable, Inc.,*

    481 F.3d 724 (9th Cir. 2007) …………………………….…..……… 14

*Rush v. Denco Enterprises, Inc.*

    857 F. Supp. 2d 969 973 (C.D. Cal. 2012) ……………………...…… 12

**Statutes**

42 U.S.C. § 12102(2)(A) …………………………………………………… 11

42 U.S.C. § 12188(a) ……………………………………………….. 10, 14

42 U.S.C. §§ 12183(a)(2) ………………………………………………… 10

Cal. Civ. Code § 55.56(a) …………………………………………..… 15

Cal. Civ. Code § 55.56(b) ………………………………………….….. 15

Cal. Civ. Code § 55.56(e) …………………………………………….. 15

Civ. Code § 51 (f) ……………………………………………………… 14

1

**Other Authorities**

2010 Standards § 208.2……………………………………………………………9

2010 Standards § 303.1……………………………………………………………9

2010 Standards § 303.2……………………………………………………………9

2010 Standards § 303.3……………………………………………………………7

2010 Standards § 305.3……………………………………………………………8

2010 Standards § 305.5……………………………………………………………8

2010 Standards § 307.4……………………………………………………………8

2010 Standards § 309.4……………………………………………………… …..9

2010 Standards § 403.3…………………………………………………….. …..7

2010 Standards § 403.4…………………………………………………………..8

2010 Standards § 403.5.1………………………………………………………... .8

2010 Standards § 404.2.7………………………………………………….…... ..9

2010 Standards § 404.2.10……………………………………………………….....7

2010 Standards § 405.7.1……………………………………………………... ..7

2010 Standards § 502.1 ………………………………………………………….. ..8

2010 Standards § 502.2 ……………………………………………………………8

2010 Standards § 502.3 ……………………………………………………………8

2010 Standards § 502.3.1………………………………………………….…..….8

2010 Standards § 502.4 ……………………………………………………………8

2010 Standards § 904.4.1………………………………………………………... ..8

Department of Justice, Technical Assistance Manual on the American

   With Disabilities Act (BNA) §§ III-4.4100 (1991) ………………………….. 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Mr. Rutherford is disabled and substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects.  As a result of these disabilities, he relies upon mobility devices, including at times a wheelchair, to ambulate. He travels throughout Southern California; and unfortunately, he has had to deal with the stress and frustration of the lack of accessible parking and other features that non-disabled people take for granted.

This occurred during his visit to Park Avenue Inn (the "Business") in Victorville, California. However, instead of simply being able to park and enjoy the Business's offerings, Mr. Rutherford once again found himself in the disappointing and frustrating, yet all too-familiar situation of finding accessible parking only to realize that he will not be able to safely park and make his way to the entrance of the Business because of barriers to access. A simple thing like parking a car and entering a store is a basic right that was unequivocally denied to Mr. Rutherford, and it was difficult and troublesome for him.

Although the law has required these simple accommodations for disabled Americans for decades, James Rutherford is continuously confronted with inaccessible restaurants, shops, hotels, and the like.  And, he has been vilified for his decision to haul law breaking businesses before courts and tribunals of the state to hold them accountable. In this case, the Defendant's failure to provide accessible parking and an accessible ramp is illegal and discriminatory under the ADA, and has been for years. Because the Business has violated the law and excluded Mr. Rutherford and customers like him for nearly three decades, Mr. Rutherford seeks an Order requiring Defendant, the owner of the property, and the owner of the Business, to provide and maintain accessible parking and accessible routes, as well two statutory penalties of $4,000 each for the barriers Mr.

5

Rutherford personally encountered during his visit, and an additional statutory penalty of $4,000 for deterrence for returning. *See Johnson v. Guedoir*, No. 2:14-CV-00930-TLN-AC (E.D. Cal. Oct. 28, 2016

## II.   RELEVANT FACTS

Mr. Rutherford is disabled and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects (SUF #1). Plaintiff suffers from spinal stenosis aggravated by a herniated disc.  He also has arthritis in his hands and damage to his heels from a previous fracture. Plaintiff has also been diagnosed with Benign Paroxysmal Positional Vertigo which adds to his instability on his feet and danger of falling, particularly on excessively sloped surfaces. Plaintiff's musculoskeletal and neurological systems are impaired such that he is physically disabled/ As a result of these disabilities, he relies upon mobility devices, including at times a wheelchair, to ambulate (SUF #2).

Nites Inn Corporation, a California corporation ("Business") is located at or about 15401 Park Avenue East, Victorville, California 92392 (SUF #3).  Defendant Nites Inn Corporation is the current owner of the real property and was so in April 28, 2019 and October 10, 2019 (SUF #10).

On April 28, 2019 and October 10, 2019, Mr. Rutherford went to the Park Avenue Inn located at or about 15401 Park Avenue East, Victorville, California 92392 for the dual purpose of booking a room and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning of federal and state law. (SUF #3).  As Mr. Rutherford parked at an accessible parking spot at the Business, he discovered that:

1.   The accessible parking spaces did not have accessible parking signage. (SUF #5)

2.   There was no accessible route connecting the accessible parking spaces to the accessible entrance.  (SUF #6)

3.   The service counter at the Business is still not accessible for either a parallel or forward approach. (SUF #7)

These barriers and others were verified and identified by Mr. Rutherford's CASp investigator who inspected the property on April 4, 2020, and incorporated into the pleadings of the First Amended Complaint. (Dkt. #24.)

Mr. Rutherford's investigator and Certified Access Specialist (CASp) Kenneth Arrington, investigated Defendant's Property on April 4, 2020 (SUF #11). Mr. Arrington found that:

1.   The slopes at the intermediate landing between ramp run #1 and ramp run #2 measure as high as 3.0% exceeding the minimum slope measurement of 2.08% allowed (Section 405.7.1). (SUF #12)

2.   Slopes at the intermediate landing between ramp run #2 and ramp run #3 measure as high as 2.9% exceeding the minimum slope measurement of 2.08% allowed (Section 405.7.1). (SUF #13)

3.   Slopes at the bottom landing of the ramp varying between 2.6% and 3.0% exceed the 2.08% slope maximum allowed (Section 403.3). (SUF #14)

4.   There is an abrupt change in level from the sidewalk measuring as high as 6", which exceeds a vertical transition of ½". Changes in level exceeding ½ inch must comply with Section 405 (Ramps) or Section 406 (Curb Ramps) (Section 303.3). (SUF #15)

5.   Excessive running slope measuring as high as 9.1% leading from the accessible route to the main entrance of the Business (Section 403.3) (SUF #16)

6.   Excessive cross slope measuring between 4.2% - 4.3% leading from the accessible route to the main entrance of the Business (Section 303.3. (SUF #17)

7.   Running slope of the accessible route extending from the ramp to the motel lobby that measures as high as 5.5%; exceeding the 2.08% running slope of walking surfaces allowed (Section 403.3). (SUF #18)

8.   The main entrance door does not have a smooth uninterrupted surface on the bottom 10" of the push side of the door that extends the full width of the door (Section 404.2.10). (SUF #19)

9.   The interior service counter measuring 48" above the finished floor exceeds the required 36" long minimum and a required 36" high

maximum above the finished floor for adequate maneuvering clearance for a forward parallel approach (Section 305.3; 305.5; 904.4.1). (SUF #20)

10. The night sales service counter measuring 42 ¾" above the finished floor exceeds the required 36" long minimum and a required 36" high maximum above the finished floor for adequate maneuvering clearance for a parallel approach (305.3; 305.5; 904.4.1). (SUF #21)

11. Inadequate width for the South side walkway, measuring at 46 ¾" wide (48" minimum required) and a clear width reduced to 30" (36" allowed) (Section 403.5.1). (SUF #22)

12. Inadequate width for the West side walkway, measuring at 46" wide (48" minimum required) (Section 403.5.1). (SUF #23)

13. The stairway adjacent to room 137 creates a vertical hazard for the visually impaired, as cane detection is not provided and vertical clearance measuring as low as 60" above the finished floor (Section 307.4). (SUF #24)

14. There is an inadequate number of van accessible spaces and accessible spaces provided on the property for the total number of 64 parking spaces provided (Section 208.2). (SUF #25)

15. The existing access aisles at the Southeast accessible space do not adjoin an accessible route restricting access to the existing curb ramp when a vehicle is parked (Section 502.3). (SUF #26)

16. There is an inadequate width for both the accessible aisle, measuring at 48" (60" required) wide, respectively (Section 502.1; 502.2; 502.3.1). (SUF #27)

17. The access aisle does not adjoin an accessible route from the front of the accessible aisle or from the rear of the accessible aisle (Section 502.3). (SUF #28)

18. There is inadequate width for both the accessible van space and the accessible aisle, measuring at 119" (144" required) and 48" (96" required) wide, respectively (Section 502.1; 502.2; 502.3.1). (SUF #29)

19. There is existing cracking and holes in parking area with gaps measuring as wide as 3 ½" and abrupt vertical changes which measure as high as 1 ½" (Section 303.1; 303.2; 303.3; 403.4). (SUF #30)

20. There are curb ramp flares measuring between 14.5% (10% maximum) and 19.9% (10% maximum) caused by a built-up curb ramp (Section

8

502.4). (SUF #31)

21.  Swimming pool door hardware that cannot be easily grasped with one hand and requires tight grasping and twisting of the wrist to operate (Section 404.2.7; 309.4). (SUF #32)

22.  The walkway along the East side of the building measures 46" wide (48" minimum required) and the walkway width has been further reduced to only 22" (36" minimum allowed) at various locations due to both permanent and non-permanent obstructions (Section 403.5.1). (SUF #33)

The barriers Mr. Rutherford encountered deny him full and equal access to the Business and Property and its facilities on an ongoing basis (SUF #8); and although this has deterred him, Mr. Rutherford intends to return for the dual purpose of availing himself of the goods and services offered to the public and to ensure that Defendants cease evading their responsibilities under federal and state law (SUF #9).

## III.   LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party may bring a motion for summary judgment where there is no genuine dispute as to any material fact.  Motions for summary judgment are not "disfavored." *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986).  In the present case, there can be no genuine dispute over the facts of the case and those facts inform the Court and the parties that it would be a waste of judicial resources for this case to proceed to trial.  There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

## IV.   THE BARRIERS TO ACCESS

Under Title III of the Americans With Disabilities Act of 1990 ("ADA), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

accommodation." 42 U.S.C. § 12182(a).   The term "discrimination" can be misleading.   The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> "Its passage was premised on Congress's finding that discrimination against the disabled is most often the product not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus.   The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct-such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance.   Rather, the ADA proscribes more subtle forms of discrimination-such as difficult-to-navigate restrooms and hard-to-open doors-that interfere with disabled individuals "full and qual enjoyment" of places of public accommodation."

*Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,* 603 F.3d 666, 670 (9th Cir. 2010).   "The third element-whether plaintiffs were denied public accommodations on the basis of disability-is met if there was a violation of applicable accessibility standards." *Moeller v. Taco Bell Corp.,* 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing, Chapman,* 631 F.3d at 945.   This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities" and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities… where such removal is readily achievable." 42. U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).   Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1.      Plaintiff must be disabled. 42 U.S.C. § 12182(a);

10

2.   The defendant's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA. *Id.*;

3.   The defendant must be a responsible party, i.e., owners, operators, lessors or lessees. *Id.*;

4.   The defendant's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendant failed to remove. 42 U.S.C. §§12183(a)(2); 12182(b)(2)(A)(iv);

5.   Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Rutherford's civil rights were violated because the Defendant failed to provide accessible parking and an accessible ramp at their Business.  Plaintiff will discuss each element, seriatim.

### A.   Plaintiff is Disabled

Mr. Rutherford is a man who is mobility impaired and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, ambulating, sitting, in addition to twisting, turning, and grasping objects (SUF #1). As a result of these disabilities, he relies upon mobility devices, including at times a wheelchair, to ambulate (SUF #2). There can be little doubt that he fits the qualification under the ADA as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability).

### B.   Defendant Owns and Operates a Place of Public Accommodation

The Business is a hotel. Hotels are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(A); The Defendant owned and operated this place of public accommodation during Mr. Rutherford's visit. (SUF #4). The Defendant, therefore, had an obligation to comply with the anti-discrimination provisions of Title III of the ADA.

### C.   The Business Has Barriers That Are Readily Removable

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so.  42 U.S.C. § 12182(b)(2)(A)(iv). The term "barrier" is not defined in the Act itself but is defined in the Technical Assistance Manual:

> III-4.4100: What is an architectural barrier? Architectural barriers are physical elements of a facility that impede access by people with disabilities.  These barriers include more than obvious impediments such as steps and curbs that prevent access by people who use wheelchairs.

Department of Justice, Technical Assistance Manual on the American with Disabilities Act (BNA) §§ III-4.4100 (1991).

Case law is more specific. "To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").  If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.,* 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice).  These are "objective" and "precise" standards and "the difference between compliance and noncompliance" is "often a matter of inches." Id.

### 1.   *Uneven Surfaces in Accessible Parking with Excessive Slope*

Defendant's accessible parking slopes that measure in excess of 14.5% - 19.9% are in violation of 2010 Standards § 502.4. (SUF #31).  Defendant should resurface existing slopes of this accessible parking space and access aisle to ensure that the maximum slopes measure no greater than 2.08% grade. This is a violation of the ADA.

### 2.   *Accessible Route Contain Cross Slopes in Excess*

The accessible route extending from the parking at the west side of the Property to the main entrance of the Business contains cross slopes in excess of 4.2% - 4.3% in violation of 2010 Standards §§ 403.3 (SUF #17).  Defendant should saw cut, remove, and replace the existing concrete and asphalt with a new compliant surface to ensure that slopes do not exceed 1:48 (2.08% cross slope). This is a violation of the ADA.

### 3.   *No Accessible Parking Signage*

There is no accessible signage posted at the head of the parking space in violation of 2010 Standards § 502.6 (SUF #5).  Defendant should provide and install new standard accessible parking signage including the International Symbol of Accessibility in white on a blue background and also include "$250 Fine" signage.  This is a violation of the ADA.

### 5.   *The Service Counter Is Inaccessible*

A portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided. A clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of counter. For a forward approach, a portion of the counter surface that is 30 inches (760 mm) long minimum and 36 inches (915 mm) high maximum shall be provided. Knee and toe space complying with 306 shall be provided under the counter. A clear floor or ground space complying with 305 shall be positioned for a forward approach to the counter. Defendant's service counter is not accessible for either a parallel or forward approach in violation of 2010 Standards §§ 904.4.1 and 904.4.2.  (SUF #20) Defendant should provide and install a new standard accessible service counter. This is a violation of the ADA.

In sum, the Defendant failed to remove barriers that were readily achievably removed and, therefore, violated the Plaintiff's rights under the ADA.

### D.   **Plaintiff Encountered Violations and Is Being Deterred from**

**Patronage**

Mr. Rutherford personally encountered these violations and he faces the threat of continued and repeated violations. Defendant failed to provide compliant accessible parking and path of travel on each of the dates of Mr. Rutherford's visits, and the access barriers continue to exist.

As of April 4, 2020, the date of Plaintiff's investigator's investigation, the parking and ramps are still not compliant. This failure to maintain the parking and path of travel demonstrates an apathy or an ignorance about compliance.  Defendant should not only be required to provide an accessible facility; it should also be required to implement a policy and procedure to maintain the facility.  Until then, plaintiff will continue to be aggrieved by the likelihood of the recurring barriers.

In sum, there has been a violation of the American with Disabilities Act.

## V.   VIOLATIONS OF THE ADA ARE UNLAWFUL UNDER CALIFORNIA LAW

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f). "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731.  As discussed above under section "IV", the defendant violated the ADA.  Thus, there has been a per-se violation of Unruh.

## VI.   REMEDIES

The Plaintiff seeks both injunctive relief and statutory damages.  Under the ADA, the plaintiff is entitled to injunctive relief.  42 U.S.C. §12188(a).  Such injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).  "Allegations that a plaintiff has visited a

public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). "We have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008). Here, Mr. Rutherford often travels through Victorville often from other areas he frequents to reach his home in Riverside County, California. The Business is a convenient place for him to stay overnight and book a room. He would like the ability to safely and independently access the Business.

Statutory damages can be recovered for a violation of the Unruh Civil Rights Act "if the violation denied the plaintiff full and equal access to the place of public accommodation on a particular occasion." Cal. Civ. § 55.56(a). A denial of full and equal access takes place where a plaintiff "personally encountered" the violation and it resulted in "difficulty, discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil Code, the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and qual access…" Cal. Civ. Code § 55.56(e).  A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

Mr. Rutherford personally encountered the access standards violations twice on January 18, 2018, and again on August 1, 2019, and has since been deterred from visiting due to his knowledge of the barriers. Therefore, Mr. Rutherford seeks three statutory penalties: two for his encounter and one for his deterrence.  "A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). We have dubbed this the "deterrent effect doctrine." Id. at 949–50.

Mr. Rutherford is entitled to at least $12,000.00, in statutory minimum damages, but likely more as supported by facts and law.  *See Johnson v. Guedoir*, No. 2:14-CV-00930-TLN-AC (E.D. Cal. Oct. 28, 2016) at *15.  *See also Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994) ("[W]here a plaintiff can prove that violations of applicable California disability access standards deterred her on a particular occasion from attempting to attend a place of public accommodation, that plaintiff states a claim for relief.")  *Civil Rights Educ. and Enforcement Center v. Hospitality Props. Trust*, 867 F.3d 1093, 1096 (9th Cir. 2017). "Courts frequently grant default judgment in Unruh Act and ADA cases and impose similar financial liabilities on the defendant." *Vogel v. Rite Aid Corp.*, 992 F.Supp.2d 998 (C.D. Cal. 2014) Id. at *9 (finding $13,739.20 was reasonable and collecting other cases where $10,119.70 and $12,000.00 were also reasonable and, in fact, "a relatively small award of damages" in similar ADA and Unruh Act cases).

## VII.  CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.

Dated: August 3, 2020                    **MANNING LAW, APC**


By: /s/ Joseph R. Manning, Jr., Esq.
Joseph R. Manning, Jr., Esq.
Attorney for Plaintiff